IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **LIBERTARIAN PARTY OF OHIO, *et al.*,** | : | **Case No. 2:11-cv-722** |
| Plaintiffs, | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | |
| **JON HUSTED,** | : | **Magistrate Judge King** |
| Defendant. | : | |
| | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Attorney Fees and Reimbursement of Litigation Expenses (Doc. 32). Defendant Husted, in his official capacity as Ohio's Secretary of State, opposes the motion. For the following reasons, Plaintiffs' Motion is **GRANTED**.

### II. BACKGROUND

In 2011, the Libertarian Party of Ohio ("LPO") challenged the constitutionality of an Ohio law, H.B. 194, which, in part, changed the rules governing ballot access in Ohio elections. LPO sought relief pursuant to 42 U.S.C. 1983, alleging violations of the First and Fourteenth Amendments. LPO sought an injunction both to prevent Defendant from enforcing the changes mandated by H.B. 194 and to restore LPO's 2011 and 2012 ballot access. After this Court held an injunction hearing, but before an injunction was granted, Defendant Husted issued Directive 2011-28, which restored LPO's 2011 ballot access. This Court then granted a preliminary injunction enjoining the Defendant from enforcing the challenged provisions of H.B. 194 and

requiring LPO's 2011 ballot access be restored.  In October 2011, this Court also ordered Defendant Husted to put LPO on the 2012 ballot.  On November 1, 2011, "consistent with the Federal District Court's order on October 18, 2011," Defendant Husted issued Directive 2011-38, placing the LPO on Ohio's 2012 primary and general election ballots.

LPO's challenge to H.B. 194, however, was not the only one.  Thousands of Ohio voters signed a petition to stay the enforcement of H.B.194, a petition which was filed on September 29, 2011, while proceedings in this Court were pending.  On December 9, 2011, Defendant concluded that the petition constituted a valid referendum, effectively suspending H.B. 194 until the November 2012 election.  Ohio then repealed H.B. 194 on May 15, 2012.  The repeal became effective on August 15, 2012.

Despite the referendum and subsequent legislative repeal, the Ohio General Assembly ("OGA"), an intervenor Defendant, appealed this Court's grant of an injunction.  On August 31, 2012, the Sixth Circuit vacated this Court's grant of an injunction and remanded with instructions to dismiss the underlying litigation.  The Sixth Circuit held that after the referendum stayed the H.B. 194 and the bill was then repealed, there was nothing left of H.B. 194 for the LPO to challenge, effectively rendering the case moot.  LPO filed this Motion for attorney's fees pursuant to 42 U.S.C. §1988(b), arguing that it is a prevailing party because it had received the only relief it sought: the non-enforcement of H.B. 194.  Defendant opposes the Motion, contending, inter alia, that H.B. was repealed by legislative action and thus, LPO is not a prevailing party.  The Motion has been fully briefed and is ripe for adjudication.

### III. LAW AND ANALYSIS

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b), permits a court to award reasonable attorney fees to the 'prevailing party" in a civil rights action brought under 42 U.S.C. § 1983.  A plaintiff is not entitled to any attorney fees, however, unless it is a "prevailing party." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist*., 489 U.S. 782, 791-92, (1989).

### A. Prevailing Party

In the Sixth Circuit, to determine whether a "preliminary-injunction winner" is a prevailing party, courts conduct a "contextual and case-specific inquiry." *McQueary v. Conway*, 614 F.3d 591, 601 (6th Cir. 2010).  In order to be considered a 'prevailing party,' a litigant must secure an enduring, irrevocable, court-ordered change in the legal relationship between the parties.  *Id*. at 596 (citing *Sole v. Wyner*, 551 U.S. 74, 86 (2007)).  The Sixth Circuit has gone on to clarify that to receive attorney's fees, a plaintiff who wins a preliminary injunction must obtain a "material change in the legal relationship" that directly benefits the plaintiff by modifying the defendant's behavior towards her. *McQueary*, 614 F.3d at 597-98.  While the very definition of a *preliminary* injunction suggests that it does not cause an irrevocable change in a legal relationship, "the *preliminary* nature of the relief does not by itself provide a ground for *never* granting fees." *Id.,* at 600 (emphasis in original).  For instance, one of the exceptions to this general rule, recognized by the Sixth Circuit, is when "the claimant receives everything it asked for in the lawsuit, and all that moots the case is court-ordered success and the passage of time," the plaintiff is a prevailing party and may be entitled to attorney's fees.  *Id.,* at 599.

When the preliminary injunction does more than catalyze a defendant into voluntary action, but compels her to act, the preliminary injunction winner can be considered the

3

"prevailing party." *Id.*  In *McQueary*, the Sixth Circuit approvingly cited two cases from other circuits for instances of when preliminary injunction winners should be considered prevailing parties: (1) *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486 (D.C. Cir. 2003); and (2) *Young v. City of Chicago*, 202 F.3d 1000 (7th Cir. 2000). In *Thomas*, plaintiffs sought to delay enforcement of a statute until a specific temporal event, public referendum on the issue that was the subject of the litigation, occurred.  330 F.3d at 493.  In *Young*, plaintiffs were granted an injunction that enabled them to protest at a specific temporal event, the Democratic National Convention.  202 F.3d at 1000.  In both cases, once the temporal event that was the subject of the litigation elapsed, the cases became moot.  Plaintiff groups in those cases both sought equitable relief with regard to a temporal event, but once the event elapsed, despite the fact that the relief ordered by the courts was temporary, the effect of the relief was permanent because there was no further issue to litigate and the cases were moot.  What is significant is that while the form of the relief was merely a preliminary injunction, it provided all the relief plaintiffs sought and, thus, had permanent effect.

Plaintiffs' case here is analogous to *Young* and *Thomas* in that Plaintiffs received temporary relief that compelled Defendant to act and had permanent effect because it effectively granted Plaintiffs all the relief they sought.  Plaintiffs sought a preliminary injunction to restore their 2011 and 2012 ballot access. Although Secretary Husted "voluntarily" granted their 2011 ballot access by issuing Directive 2011-28, he admitted that he was compelled by this Court's preliminary injunction also to grant Plaintiffs' 2012 ballot access.  Indeed, on November 1, 2011, Defendant Husted issued Directive 2011-38, "[c]onsistent with the Federal District Court's order on October 18, 2011," placing the LPO on Ohio's 2012 primary and general election ballots.  *See* Ohio Secretary of State Directive 2011-38.  With regard to 2012 ballot access, Plaintiffs sought

4

relief in relation to a specific event and received ostensibly temporary relief that had permanent effect once the 2012 election passed.

Although Plaintiffs also requested additional relief in the form of declaring certain amendments to voting regulations unconstitutional and enjoining their enforcement, a plaintiff becomes a "prevailing party" by succeeding on a single claim, "even if he loses on several others and even if that limited success does not grant him the 'primary relief' he sought." *McQueary*, 614 F.3d at 603 (quoting *Tex. State Teachers Ass'n,* 489 U.S. at 790-91). "The significance of the relief obtained goes only to the amount of fees" a prevailing party may recover, not to whether the party is prevailing. *Id.*, (citing *Eckerhart*, 461 U.S. at 434-35.).

### B. Attorney Fees and Expenses

Under 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party […] a reasonable attorney's fee." The "starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 551 (6th Cir. 2008). If the party seeking attorney's fees "has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens Counsel for Clean Air*, 478 U.S. 546, 564 (1986).

#### i. Hours Reasonably Expended

In determining the hours reasonably expended by a prevailing party's counsel:

> [t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief requested. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.

*Wooldridge v. Marlene Industries Corp.,* 898 F.2d 1169, 1173 (6th Cir. 1990).  Plaintiffs' counsel, Mark Brown, submitted a declaration pursuant to 28 U.S.C. 1746, detailing hours billed in this action from August 4, 2011 to September 4, 2012.  In total, Plaintiffs' counsel billed 134.5 hours in this case.  While Defendant does not specifically object to compensating Plaintiffs for the 37.5 hours Plaintiffs' billed between August 4, 2011 and September 29, 2011, Defendant does object to the hours Plaintiffs' counsel billed in the case after September 29, 2011, arguing that once the referendum was filed, Plaintiffs' case was moot.

In an appeal from a previous ruling of this Court, however, the Sixth Circuit stated that "[a]fter the suspension of H.B. 194's implementation by the pending referendum *and the bill's later repeal*, there was nothing left for the LPO to challenge." *Libertarian Party of Ohio v. Husted*, 497 Fed.Appx. 581, 583 (6th Cir. 2012) (emphasis added).  Essentially, the Sixth Circuit held that the case only became moot once the bill was actually repealed, not once the referendum was filed.  The bill was effectively repealed by the General Assembly on August 15, 2012.  Plaintiffs' counsel billed only 3.5 hours after that date.  Hence, this Court finds that the 131 hours billed between August 4, 2011 and August 15, 2012 by Plaintiff's counsel are hours reasonably expended, while the 3.5 hours billed after August 15, 2012 are not hours reasonably expended.

Plaintiff's counsel also seeks attorney's fees for the 3.3 hours billed in preparing this Motion for Attorney Fees.  The Sixth Circuit holds that "a lawyer should receive a fee for preparing and successfully litigating the attorney fee case after the original case is over." *Coulter v. Tennessee*, 805 F.2d 146, 150 (6th Cir. 1986).  Thus, the 3.3 hours Plaintiffs' counsel billed while preparing the Motion for Attorney Fees are hours reasonably expended.  In total, Plaintiff's counsel reasonably expended 134.3 hours in this case over a period of approximately one year.

**ii. Reasonable Hourly Rate**

In determining a reasonably hourly rate, "[t]he appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Sykes v. Anderson*, 419 Fed. Appx. 615, 618 (6th Cir. 2011) (quoting *Gonter v. Hunt Valve Co.,* 510 F.3d 610, 618 (6th Cir. 2007).).  The market rate is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Gonter*, 510 F.3d at 618.  When an attorney has no private practice with standard billing rates, rates charged for similar services in the community can be used as guidance. "The court should look to the fair market value of the services provided . . . the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney." *Wells v. New Cherokee Corp.,* 58 F.3d 233, 239 (6th Cir. 1995).  The Sixth Circuit holds six factors relevant in determining the reasonable rate of an attorney's services: (1) the value of the benefit rendered to the client; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974).

Plaintiffs suggest that an hourly rate of $350 is reasonable based on the attorneys' expertise, experience, and prevailing rates in the legal community.  Plaintiffs' counsel made a declaration which identifies examples of attorneys' fees awarded in similar cases in the Southern District of Ohio ranging from $300-400.  Counsel also highlights a 2008 survey in *The National Law Review* providing the fees of three firms within this district, showing maximum billing rates

7

ranging from $450-490. Defendant argues that in another case in this district, however, the same attorneys serving Plaintiffs' counsel were awarded only $250 per hour as reasonable rate necessary to encourage competent attorneys to undertake similar cases. *Moore v. Brunner,* 2:08-CV-224, 2010 WL 317017 (S.D. Ohio Jan. 25, 2010). Although there is a presumption of reasonableness regarding the rate demonstrated by counsel, reasonable fees are not to provide a windfall to attorneys or exceed the amount "necessary to encourage competent lawyers to undertake representation." *Gonter*, 510 F.3d at 616 (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). This Court may also factor in the significance of the relief obtained when determining reasonable fees. *See Eckerhart*, 461 U.S. at 434-35.

This Court finds that this case was taken on a contingent fee basis. Furthermore, § 1983 litigation involves constitutional rights and is inherently complex, particularly where the subject is voting regulations, which exist at the intersection of state and federal law. Section 1983 also seeks to vindicate citizens' constitutional rights and, thus, society has an interest in encouraging attorneys to take such cases. Finally, the skill and standing of counsel on both sides of this case is substantial. Plaintiffs' counsel ultimately obtained all the relief sought by his clients: the LPO appeared on Ohio election ballots in 2011 and 2012. Fee awards in similar cases in this district in the recent past have found $300 to be a reasonable rate and Plaintiffs' counsel was aware of that fact when he undertook to represent Plaintiffs. A rate of $300 appears to be sufficient to motivate skillful attorneys to undertake representation in § 1983 cases, but not excessive so that it would constitute a windfall. This Court, therefore, finds $300 per hour to be a reasonable hourly rate in this action.

### iii. Litigation Expenses

Plaintiffs' costs for filing fees and the cost of the preliminary hearing transcript total $398.60 for which Plaintiffs also seek compensation. Defendant does not challenge the reasonableness of these costs and they do not appear excessive.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Attorney Fees and Costs is **GRANTED**. Plaintiffs' counsel reasonably billed 134.3 hours in this case at a reasonable hourly rate of $300 for a total of $40,290.00.  Plaintiffs incurred reasonable litigation expenses of $398.60    The Court thus **ORDERS** Defendant to pay Plaintiffs' attorney fees and expenses of $40,688.60.

**IT IS SO ORDERED.**

           **s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 11, 2013**

9